Madison County Coal Co., v. St. bt. Colona.

THE MADISON COUNTY COAL COMPANY, Plaintiff in Error, v. STEAMBOAT COLONA, Defendant in Error.

1. *Boats and Vessels—Limitations.*—Suits, under the act R. C. 1855, p. 313, § 42, against boats and vessels upon running accounts for supplies, &c., must be brought within six months after date of the last item in the account.
2. *Boats and Vessels.—Lien.*—A party has a lien upon a boat for labor done and services rendered in getting out a boat and placing her in a position to begin her voyage, and in such cases there is none the less a lien because part of the service consisted in towing the boat.

*Error to St. Louis Circuit Court.*

*Knight,* for plaintiff in error.

I. The item for towing said boat is clearly within the second clause of the first section of the act. This clause gives a lien for " labor done " by " tradesmen and others in building, repairing, getting out, furnishing, or equipping thereof." But if there be any doubt of its being embraced in this clause, there certainly can be none that it is so embraced in the fourth clause of said section. This fourth clause gives a lien " for all demands accruing from the non-performance of any contract touching the transportation of persons or property." This contract was. with the master and owner for towing the boat. The boat was to pay plaintiff ten dollars for towing said boat from the head of Bloody Island to the wharf at St. Louis. (Smith v. St. bt. Raritan, 10 Mo. 527 ; Phegley v. St. bt. David Tatum, 33 Mo. 461; Farrington v. Meek, 30 Mo. 378.) Towage is allowed in admiralty on the same ground of salvage or wharfage. (Emerson v. Bark Pandora, Newb. 434; 1 Conklin's Adm'y, p. 28, note.)

II. The account sued on was a *running account*. (Phelps v. St. bt. Eureka, 14 Mo. 532.) This contract to " let the account run, and for more coal," was beneficial to the boat; and the subsequent delivery of the coal would relate back to the time of the contract. The general doctrine of relation is, that when two or more acts concur to create an estate, the subsequent acts relate back to the original act. (18 Vin.

Abr., tit. Relation, § 8, p. 290 et seq.; 1 Johns. Cas., 81; Jackson v. Ramsay, 3 Cow. 75.)

The difference between a running account and one that does not run is, that in the latter case each item (or those contracted for and delivered at one time) is a separate cause of action by itself. The minds of the parties are presumed only to have concurred as to the single transaction, and the same becomes an account stated as between the parties. In such case, the account bears interest. (2 Sto. Cont. § 1026; Carson et al. v. St. bt. Hillman, 16 Mo. 256; Taylor v St. bt. Rob't Campbell, 20 Mo. 254; Clark v. Humphreys, 25 Mo. 99; Pratt v. Reed, 19 How., S. C. 359; Newb. Adm. 111; 12 Mo. 477.)

*Rankin*, for defendant in error.

I. The demand accrued and the suit was brought within the county of St. Louis. Clearly the cause of action on the first two items was barred by the limitation of the statute. The case of Carson & Brooks v. St. bt. Dan. Hillman, 16 Mo. 256, is not applicable here, because the account (or demand sued on) in this case is not an open running account; from the face of the account, it would seem that separate contracts were made in reference to each furnishing, because different prices were charged for the several items. (St. bt. Mary Blane v. Beehler, 12 Mo. 477.)

II. In regard to the claim for towing, it is sufficient to say that such demands are not specified nor enumerated in the statute, and it cannot be made out a constructive supply.

HOLMES, Judge, delivered the opinion of the court.

This was a suit under the " Act concerning boats and vessels" (R. C. 1855, p. 303, § 1), upon the following demand:

*Steamboat Colona Dr. to the Madison Coal Company.*

| | | | | |
|---|---|---|---|---|
| 1860. Feb. 21. | To 300 bush. coal, at 10 cts. | - - | $30 | 00 |
| " Mar. 16. | " 300 " " " " | - - - | 30 | 00 |
| " Nov. 2. | " towing said boat and taking in lines | | 10 | 00 |
| " " 6. | " 300 bush. coal, at 8⅛ cts. | - - - | 24 | 22 |
| | | | $94 | 22 |

The answer admitted the last item, but denied that there was any lien on the boat for the other items ; and upon the trial, the court instructing the jury to that effect, judgment was rendered for the plaintiff for the last item only. The statute provides that the suit shall be commenced within six months "after the true date of the last item of the account upon which the action is founded" (*ibid.* § 42); and it has been held by the court in several cases, that the time is to be reckoned from the date of the last item. (Carson v. St. bt. Hillman, 16 Mo. 256.) It is said there was an interval of more than six months between the second and third items, and that the lien for the first two items was lost by lapse of time. The evidence shows that the account was kept open at the instance of the master of the vessel, who expected that he would need more coal, and preferred to settle the whole bill at once. It appears to have been understood by both parties to be an open running account. The whole constituted but one demand, and the time should have been counted from the date of the last item. We think it came within the intent of the act and the decisions of this court.

As to the item for "towing said boat and taking in lines," there appears to be more difficulty. It is clear that it cannot be brought within the first, third or fourth clauses of the first section of the act. It is not for wages of a person employed as hand on board of the boat, nor is it any contract " touching the transportation of persons or property" on the boat. If it can be a lien at all, it must come under the second clause of the section ; and the only words which can be applied to it by any rational construction are these—" or on account of labor done by mechanics, tradesmen, or others, in the building, repairing, getting out, furnishing, or equipping thereof." It is not labor done in building, repairing, furnishing, or equipping the boat; a liberal construction has been given to the act in respect to what constitutes the *equipment* of a boat, and it has been held that a barge, or a keel-boat, used to assist in the navigation of the vessel, in certain waters, is a part of her equipment, as a thing indispensable in navigating

low stages of the river, and necessary in order to keep the vessel in employment. (Ames v. St. bt. Louisa, 9 Mo. 629; Gleim v. St. bt. Belmont, 11 Mo. 112.) But a tow-boat does not come within the category. When a steamboat is in such a condition as to require towing from one place to another, she cannot well be herself in a condition fit for navigating the river. If a boat had to be towed from Cincinnati to St. Louis, the labor to be done would not properly belong to a service in the navigation of the vessel itself, but would rather be an expense incurred by the owners directly for a service that does not come within any lien given by the act.

The other words are "getting out" the boat. Construed with reference to the building or repairing of a boat, they are broad enough to cover all those services or expenses which might be necessary to put her afloat when finished, and to place her in a situation that would enable her to begin her business of navigating the river. They are not necessarily to be confined to building or repairing. A boat may be laid up for a season and then brought out again. "Bringing out a boat" is a common phrase among boatmen; it is usually applied to the building of a new boat; it may also be understood as applying to a boat newly repaired, or newly brought out when merely laid up for a season; and the phrase "getting out" a boat may be taken in a similar sense.

This boat appears to have been laid up or moored at Bloody Island by lines fastening her to the shore, and the plaintiff was employed to take in the lines and tow her across the river to the wharf at St. Louis. This may as well be said to be a service in getting out the boat as if she been laid up for repairs. It seems to have been necessary in order to place the vessel in a situation to commence her voyage. Giving the words their evident signification, they may fairly be interpreted to include this item. We would not be understood as holding that there can be a lien under this act merely for the towing of a boat as such. The ground of the lien is the work and labor done by a tradesman or other person in getting out the boat and placing her in a position to begin her voyage

again, and in such case there would be none the less a lien because a part of the service consisted in a towing of the boat. Upon the evidence in this case, we think the particular service came within the terms and intent of the act; it follows that the instructions given for the defendant were erroneous.

The judgment is reversed and the cause remanded. Judge Wagner concurs; Judge Lovelace absent.