## FORREST v. VANDERBILT.

### (Circuit Court of Appeals, Third Circuit. March 11, 1901.)

### No. 18.

1. SHIPPING—SALE OF YACHT—APPURTENANCES—LAUNCH TENDER.

A naptha launch used by the owner as a tender, in connection with a 30-foot yacht owned by him, but which could not be carried on the yacht, did not accompany it on its trips, and was not a part of the usual equipment of such yachts, did not by such use, merely as a matter of convenience, become an appurtenance of the yacht, which passed by a sale of the latter.

2. AGENCY—SCOPE OF AGENT'S AUTHORITY—UNAUTHORIZED SALE OF VESSEL.

Agents who are authorized by the owner to sell a yacht are not thereby given any authority, either actual or apparent, to sell a naptha launch, sometimes used as a tender to the yacht, but which was not legally an appurtenance thereto, but a separate vessel, and, in the absence of actual authority, they cannot bind the owner by a sale of the launch.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Robert D. Coxe, for appellant.

J. Rodman Paul, for appellee.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. This is an appeal from a decree in a cause of possession, civil and maritime. William K. Vanderbilt, Jr., the appellee, filed his libel to recover a certain naptha launch alleged then to be in the possession of Robert L. Forrest and J. G. Neafie-Whitaker. Forrest alone made claim to the launch and answer to the libel. The case was heard on exceptions to the answer. The exceptions were sustained, and the court below decreed that possession of the launch should forthwith be delivered to the libelant by Forrest. The averments of the libel material to the inquiry before us are as follows:

"First. That the libellant is the true and lawful owner of the said naptha launch. * * *

Second. That possession of the said naptha launch is now and has been since on or about the first day of May last past wrongfully withheld from the libellant by the said Robert L. Forrest on an alleged ground of title to the possession of said naptha launch.

Third. That the said claim of title to the possession of the said naptha launch is entirely invalid and insufficient, the same being dependent upon and referred to an alleged sale by the said libellant to the said Robert L. Forrest of the said naptha launch, whereas in fact there was no sale either in law or in fact of the said naptha launch to the said Robert L. Forrest as is hereinafter set forth.

Fourth. That on or about the 28th day of March, 1900, the libellant, through his agents, Gardiner & Cox, sold to the said Robert L. Forrest the yacht 'Carmita,' then being at Newport, Rhode Island, in the custody of the Newport Ship Yard, for the sum of four thousand dollars ($4,000), subject to her being sound and in good condition. * * * The said naptha launch * * * in no way belonged to, was appurtenant to, nor was a tender to the yacht 'Carmita,' but on the contrary the said naptha launch was far too large to be used with and hoisted aboard the yacht 'Carmita,' and no arrangements were or could be provided upon said yacht for the hoisting aboard of the said naptha launch.

Fifth. That the said libellant had authorized and instructed the said agents Gardiner & Cox to sell the said yacht 'Carmita' but had in no respect authorized or instructed them to sell the naptha launch, and they had in fact no authority whatsoever from the libellant to sell said launch, nor was any mention made of said launch in the contract of sale whereby the said Robert L. Forrest purchased the yacht 'Carmita' from libellant through his said agents. The said contract of sale is contained in two letters marked 'A' and 'B,' true copies of which are appended hereto and asked to be taken as a part hereof.

Sixth. That on or about the seventh day of April, 1900, the said Robert L. Forrest having inspected the yacht 'Carmita,' and having found her sound and in good condition, paid to the said Gardiner & Cox as agents for said libellant the purchase price thereof, being four thousand dollars ($4,000), and himself dictated the receipt for said purchase price, a true copy of which is hereto appended marked 'C,' and asked to be taken as part hereof, wherein in enumerating the various items of the equipment of the said yacht 'Carmita,' was included the word 'launch'; and said receipt without the authority, knowledge or consent of the libellant who had authorized his said agents to sell the yacht 'Carmita' only was improvidently signed by them without noticing that the word 'launch' was contained therein, and said receipt was delivered to the said Robert L. Forrest.

Seventh. That thereupon the said Robert L. Forrest upon presentation of the said receipt at the said Newport Ship Yard received and took away not only the yacht 'Carmita' but also the said naptha launch, which was delivered to him without authority from the libellant or anyone on his behalf and against the express instructions of libellant's agents. That said Robert L.

Forrest was informed by Gardiner & Cox and by the Newport Ship Yard's president and employees before taking the launch that William K. Vanderbilt, Jr., as soon as advised of the matter repudiated the sale of the launch and denied any authority on the part of Gardiner & Cox to sell same or order its delivery.

Eighth. That thereupon the libellant having discovered that said naptha launch had been delivered to the said Robert L. Forrest without the knowledge and consent of libellant, made due demand upon the said Robert L. Forrest that he deliver to him possession of the said naptha launch, which the said Robert L. Forrest has omitted and refused to do."

The two letters mentioned in paragraph 5 of the libel and the receipt mentioned in paragraph 6 thereof are as follows:

"A.

March 28, 1900.

To J. G. Neafie-Whitaker, Esq., Philadelphia—Dear Sir: We beg to advise you that Mr. W. K. Vanderbilt, Jr., has accepted your offer for your friend of $4,000 for the 'Carmita,' subject to her being sound and in good condition. We also enclose you copy of letter sent to Mr. Vanderbilt. Mr. Evans is better, etc., etc. Gardiner & Cox.

B.

Messrs. Gardiner & Cox, 1 Broadway, New York City—Gentlemen: Through the courtesy of Mr. J. G. Neafie-Whitaker, I understand that my offer of $4,000 for 'Carmita' subject to my inspection being satisfactory, has been accepted. Owing to press of business, I will be unable to get away from here until after the middle of the coming week, when I will be in New York and go from there, with my skipper, to Newport to see the boat. I trust that we can have the transaction entirely settled without any great delay. Mr. Whitaker has kindly given me copy of your letter to Mr. Vanderbilt. I trust that you will be able to furnish a complete inventory of everything belonging to 'Carmita,' and awaiting your favor I remain,

Very truly yours,

R. L. F. Robert L. Forrest.

C.

New York, April 7, 1900.

Received of Robert L. Forrest four thousand ($4,000) in full payment for yacht 'Carmita,' including her boats, launch-tender, spars, sails and complete interior and deck fittings to put her in full commission, said boat and appurtenances above mentioned to be delivered at once to you.

W. K. Vanderbilt, Jr.,
By Gardiner & Cox, Yacht Agents."

The averments of the answer so far as material to the decision of this appeal are as follows:

"First. This claimant and respondent denies that the libellant is the true and lawful owner of the said naptha launch. * * *

Second. This claimant denies that possession of the said naptha launch has been wrongfully withheld from the libellant by the claimant, Robert L. Forrest, since on or about the first day of May, 1900.

Third. It is true as averred in the third paragraph of the libel in this cause, that this claimant, the said Robert L. Forrest, claims title to the said naptha launch; but it is not true, as averred in the said libel, that the said Robert L. Forrest's claim of title is entirely invalid and insufficient. Nor is it true, as averred in the said libel, that there was no sale, either in law or in fact, of the said naptha launch to the said Robert L. Forrest. As is hereinafter set forth, this claimant's title to the said naptha launch is derived from an unimpeachable sale thereof by the accredited agents of the libellant and is complete.

Fourth. The averment in the fourth paragraph of the said libel as to the sale of the yacht 'Carmita' by the libellant through his agents, Gardiner & Cox, is incorrect and misleading, and is untrue so far as it fails to describe the real nature of the transaction between said agents and this claimant. The true character of the said transaction, covering a sale of the said yacht with the said naptha launch, is hereinafter fully set forth. * * * It is true that the said naptha launch was likewise at Newport, but this claimant denies the averment that the said naptha launch in no way belonged to, nor was appurtenant, nor was a tender to the yacht 'Carmita.' * * * In point of fact, the said yacht 'Carmita' was designed, constructed and has been used as a racing yacht, and with such object in view, when in racing trim, there is no adequate provision but for one, or at the most two, light boats in compliance, merely with the requirements of the law. While it is, undoubtedly, true that a naptha launch of the size of the naptha launch libelled in this proceeding could not be hoisted on the deck of the yacht 'Carmita,' it is still the fact that it is the custom for such yacht to have such a naptha launch as a tender in its service. So that the difficulty or impossibility of hoisting the said naptha launch on board is not a circumstance that could enter into the consideration of the question whether the said naptha launch would be an appurtenance of the said yacht 'Carmita'; which question, however, could only be considered in the absence of the written contract between the libellant's agents and the claimant, and hereinafter fully set forth, specifically conveying the said naptha launch to this claimant.

Fifth. The averment in the fifth paragraph of the said libel that Gardiner & Cox were agents to sell the said yacht 'Carmita' this claimant admits to be true. Subsequent allegations in said fifth paragraph to the effect that 'libellant had in no respect authorized or instructed his agents to sell the naptha launch and they had in fact no authority whatsoever from the libellant to sell said launch,' this claimant respectfully submits that he is advised the same are irrelevant, immaterial and incompetent, in the absence of any averment by the libellant that this claimant had previous to the said sale notice of any want of authority on the part of the said agents, Gardiner & Cox, to sell the said naptha launch. This claimant expressly denies that there was no mention of the said launch in the contract of sale whereby the said Robert L. Forrest purchased the yacht 'Carmita' from libellant through his agents; and he further denies that the said contract of sale is contained in two letters marked 'A' and 'B,' copies of which are made part of the said libel. The real contract of sale is embodied in three writings marked 'A,' 'B' and 'C,' copies of which are made a part of the said libel. In the paper marked 'C,' signed by Gardiner & Cox, agents of the libellant, the 'launch tender' expressly designated, as admitted distinctly in the sixth paragraph of the libel in this cause, is the 'naptha launch' libelled in this proceeding.

Sixth. The averments of the sixth paragraph of the said libel are only partially true, so far as they set up the consummation of the negotiations on April 7, 1900, between this claimant and the agents of libellant; but they fail to set forth the fact that the dictation of the said paper 'C,' called by the libellant a 'receipt,' was done by this claimant at the express request of the said agents, Gardiner & Cox, in the office of the said agents, No. 1 Broadway, in the City of New York. The said 'receipt' was typewritten by an employee of the said Gardiner & Cox, agents of the libellant, and thereupon submitted by such employee to Mr. Cox, of the said firm, who, after carefully examining the same, directed the addition of the affix 'Jr.' to Mr. Vanderbilt's (the libellant) name; and the said Cox thereupon signed the said paper in the firm name of Gardiner & Cox, as agents of William K. Vanderbilt, Jr., as appears by the copy thereof marked 'C' and made a part of the libel; and the averment of the said sixth paragraph of the said libel, that the said 'receipt' was improvidently signed by the said agents without noticing the word 'launch' was contained therein, this claimant avers is wholly untrue. As to this averment and the concluding averment of the said sixth paragraph of the libel, to the effect that the said 'receipt' was signed without the authority, knowledge or consent of libellant, this claimant respectfully submits that he is advised that they are immaterial, irrelevant and incompetent, there being no

107 F.—47

allegation that notice of any such want of authority was had by this claimant previous to the sale of the said naptha launch.

Seventh. It is true, as averred in the seventh paragraph of the said libel, that the said Robert L. Forrest upon presentation of the said 'receipt,' at the Newport Ship Yard, received and took away the yacht 'Carmita' and the said naptha launch. This claimant further avers that this was in the exercise of his legal right to the ownership of the said yacht and launch in accordance with the stipulations and effect of the contract between this claimant and the libellant through his agents as expressed in the said paper writing or 'receipt' of April 7, 1900. This claimant emphatically denies that the said naptha launch was delivered to him without authority from the libellant or anyone in his behalf; and he respectfully submits the circumstances already set forth which preceded and attended the execution of the paper writing or 'receipt' of April 7, 1900, marked 'C,' as well as the facts hereinafter set forth, in support of this denial. This claimant further denies that he was informed by Gardiner & Cox, or by anyone before taking the launch, that the libellant repudiated the sale of the launch. Only after his assumption of his ownership of the said yacht and naptha launch, and their removal to the City of Philadelphia by this claimant, the said Gardiner & Cox, agents, informed this claimant in writing that they had exceeded their authority in including the 'launch-tender,' or naptha launch, in the said sale. But this claimant respectfully submits that he is advised that in the absence of an averment that this claimant was previously informed of the exact extent of authority possessed by the said agents in the premises, an allegation of want of authority on their part to include such naptha launch is immaterial, irrelevant and incompetent; and this claimant respectfully excepts to this and similar averments in the said libel contained touching such want of authority.

Eighth. This claimant admits that demand has been made upon him to surrender possession of the said naptha launch, and that he has refused so to do; but the claimant respectfully submits that he is advised that the averment that the naptha launch was delivered to him without knowledge and consent of the libellant is immaterial, irrelevant and incompetent, in the absence of an averment that the claimant had notice and knowledge previous to the sale of the alleged want of authority on the part of the libellant's agents to make the sale of the said naptha launch.

\* \* \* \* \* \* \* \* \* \*

Eleventh. In addition to the facts set forth in the foregoing paragraphs of the claimant's answer in this cause, he further alleges as follows: The said Gardiner & Cox are, and have been for a long time, engaged in the business of selling yachts and other vessel property on commission for the respective owners thereof, and are known according to the printed title on their letterheads and business papers as Naval Architects, Engineers and Yacht Brokers. As admitted by the said libellant they were his agents for the sale of the yacht 'Carmita'; and all of the claimant's dealings and negotiations with said Gardiner & Cox were upon the justifiable assumption that every act within the scope of their authority as such agents would completely and irrevocably bind their principal, the said libellant. After agreeing with the said Gardiner & Cox, the libellant's agents in the City of New York, to purchase the yacht 'Carmita,' 'subject to my inspection being satisfactory,' and upon the further expressed conditions that 'you' (the said agents) 'will be able to furnish a complete inventory of everything' belonging to 'Carmita,' as is set forth in claimant's letter marked 'B' attached to the libel; this claimant on April 5, 1900, proceeded to Newport, Rhode Island, to inspect the said yacht and appurtenances. While there, this claimant learned from various creditable persons that the said naptha launch or 'launch-tender,' as it was more generally known, had been employed as a tender to the said yacht 'Carmita,' and was generally known and designated as the '"Carmita's" launch-tender,' and was also considered in the waters of Newport and the vicinity as an indispensable appurtenance to the yacht. The yacht 'Carmita' has a draught of eleven feet four inches, making it impossible in nearly every instance for the vessel to effect any anchorage that is not a comparatively great distance from shore; and the said naptha launch is, consequently, an

absolute necessity to the said yacht. Without said naptha launch the yacht itself would be deprived of much of its utility and serviceability, its saleability impaired and its value correspondingly diminished. Wherefore this claimant after his promised inspection by him of said yacht, and as previously intimated by him, after an examination by him of 'everything belonging to the "Carmita"' upon definitely ascertaining that the said naptha launch was a natural and indispensable appurtenance of the 'Carmita,' this claimant returned to the City of New York, and proceeding to the office of Gardiner & Cox, the libellant's said agents, consummated the negotiations between them and himself, as already hereinbefore set forth, by dictating, at the express request of the said Gardiner & Cox, as accredited agents of the libellant, on April 7, 1900, the paper 'C' attached to the said libel; and which is the incontrovertible evidence of the contract between libellant and this claimant."

The grounds of exception of the libelant to the answer are as follows:

"First. Because the respondent does not aver that the firm of Gardiner & Cox, in said answer mentioned, had authority to sell the said naptha launch.

Second. Because the respondent does not deny that the said Gardiner & Cox exceeded their authority in selling the said naptha launch.

Third. Because the respondent does not aver any usage or custom by which naptha launches pass as tenders or appurtenances upon sale of a yacht.

Fourth. Because the respondent admits that the contract of sale for the yacht 'Carmita' was completed before he even knew of the existence of the said naptha launch.

Fifth. Because the only averments of the said answer to show that the said naptha launch was in law and in fact an appurtenance of the said yacht 'Carmita' are the statements of 'various creditable persons' at Newport not averred or shown to have any authority to speak upon the subject or to have any knowledge.

Sixth. Because the respondent avers that the said launch is a necessity to said yacht, because the latter was obliged to anchor at some distance from the shore, although it is admitted that the said yacht is provided with row boats.

Seventh. Because the said respondent has not well and sufficiently answered the various articles of the libel, and has entirely evaded the same and neglected to give any legal or sufficient answer thereto."

The answer does not deny that the libelant prior to and until the sale of the yacht Carmita to Forrest was the owner of the naptha launch. In fact Forrest lays claim to the launch under Vanderbilt. The answer avers that "this claimant's title to the said naptha launch is derived from an unimpeachable sale thereof by the accredited agents of the libelant and is complete." The substantial questions raised by the assignments of error are two: (1) whether the launch was an appurtenance of the yacht and, as such, passed in ownership to Forrest upon the sale to him of the yacht; and (2) whether, if the launch cannot be treated as such appurtenance, title to it was acquired by Forrest under the express terms of the written instrument or receipt of April 7, 1900. The libel admits that Gardiner & Cox were agents of the libelant for the sale of the yacht and that it was sold by the libelant through those agents to Forrest. The authority to sell, if not in terms extending to appurtenances, by implication included appurtenances as well as the yacht itself. But, without attempting to define the essential nature of an appurtenance of a vessel, we are clearly of opinion that the launch was not an appurtenance of the yacht. It was not and could not be carried by the yacht and did not accompany it on its trips or voyages. It did not constitute

part of the yacht's outfit, nor was its use in connection with the yacht, though doubtless convenient and desirable, in any legal sense necessary to the attainment of the objects for which the latter was employed. The libel avers that the launch "in no way belonged to, was appurtenant to, nor was a tender to the yacht." The answer, it is true, expressly denies this averment and alleges that "it is the custom for such a yacht to have such a naptha launch as a tender in its service"; that "this claimant learned from various creditable persons that the said naptha launch * * * had been employed as a tender to the said yacht 'Carmita,' and was generally known and designated as the ' "Carmita's" launch-tender'; and was also considered in the waters of Newport and the vicinity as an indispensable appurtenance to the yacht"; that owing to the fact that by reason of its draught the yacht is unable to anchor near shore the launch is "an absolute necessity to the said yacht"; and that the claimant "upon definitely ascertaining that the said naptha launch was a natural and indispensable appurtenance of the 'Carmita' * * * consummated the negotiations," &c. These allegations fall far short of a substantive affirmative averment of the existence of a particular custom or usage, with reference to which the sale was effected, recognizing the launch as an appurtenance of the yacht. Nor does the answer sufficiently meet the averment of the libel that the launch was not such appurtenance. While it contains a categorical denial of this averment, it nevertheless admits facts which compel us to hold, as matter of law, that the launch was not an appurtenance of the yacht and that title to it did not pass to Forrest as incident to the sale to him of the latter vessel. We are thus brought to the question whether Forrest acquired title to the launch under the written instrument or receipt of April 7, 1900. The letter of March 28, 1900, of Gardiner & Cox to Neafie-Whitaker stated that "Mr. W. K. Vanderbilt, Jr., has accepted your offer for your friend of $4,000 for the 'Carmita,' subject to her being sound and in good condition." Forrest in his reply to the above mentioned letter said: "I understand that my offer of $4,-000 for 'Carmita,' subject to my inspection being satisfactory, has been accepted. Owing to press of business, I will be unable to get away from here until after the middle of the coming week, when I will be in New York and go from there, with my skipper, to Newport to see the boat. I trust that we can have the transaction entirely settled without any great delay. * * * I trust that you will be able to furnish a complete inventory of everything to 'Carmita,'" &c. It appears from the answer that it was only after this correspondence that Forrest first learned that the launch "had been employed as a tender to the said yacht 'Carmita.'" Having ascertained this fact he went to the office of Gardiner & Cox and "consummated the negotiations between them and himself, as already hereinbefore set forth, by dictating, at the express request of the said Gardiner & Cox, as accredited agents of the libelant, on April 7, 1900, the paper 'C' attached to the said libel." This paper is the receipt for $4,000 from Forrest "in full payment for the yacht 'Carmita,' including her boats, launch-tender, spars, sails and complete interior and deck fittings to put her in full commission." The "launch-tender" mentioned in the

receipt is the naptha launch in suit. The libel avers that, while the libelant had authorized and instructed Gardiner & Cox to sell the yacht, he "had in no respect authorized or instructed them to sell the naptha launch, and they had in fact no authority whatsoever from the libelant to sell said launch." The answer contains no denial of this averment. Its truth is practically admitted by the claimant who states that it is "irrelevant, immaterial and incompetent, in the absence of any averment by the libelant that this claimant had previous to the said sale notice of any want of authority on the part of the said agents, Gardiner & Cox, to sell the said naptha launch." The libel further avers with reference to the receipt of April 7, 1900, that "said receipt without the authority, knowledge or consent of libellant who had authorized his said agents to sell the yacht 'Carmita' only, was improvidently signed by them without noticing that the word 'launch' was contained therein." The claimant denies that the paper was improvidently signed by Gardiner & Cox without noticing the presence of the word "launch," but practically admits the truth of the allegation of the want of authority on their part, saying that "as to this averment and the concluding averment * * * to the effect that the said 'receipt' was signed without the authority, knowledge or consent of libelant, this claimant respectfully submits that he is advised that they are immaterial, irrelevant and incompetent, there being no allegation that notice of any such want of authority was had by this claimant previous to the sale of the said naptha launch." It is not disputed in the answer that Gardiner & Cox had not in fact been authorized by the libelant to sell the launch, and that the receipt was signed by them without authority from him. They were agents possessing only a special and limited authority to sell. Authority to sell one vessel cannot of itself operate as authority to sell another; and the pleadings do not show that the libelant in any manner held Gardiner & Cox out to the public or to Forrest as having authority to sell the launch. Neither their actual authority nor their undertaking to sell the yacht could clothe them with apparent authority to sell the former vessel. Such apparent authority could not arise from the wrongful or unauthorized act itself. Nor do the pleadings disclose ratification, acquiescence, laches, bad faith or any other conduct on the part of the libelant of such character as to preclude him from disputing the existence of authority on the part of Gardiner & Cox to sell the launch. The contention of the claimant involves the proposition that because they had been authorized by the libelant to sell the yacht the law clothed them with power to bind him by undertaking to sell on his account, and without his authority, the launch to a third person having no notice of such lack of authority. But this position clearly is untenable. Whatever claim Forrest may have against Gardiner & Cox, he acquired through them no title to the launch or right to its possession. It is unnecessary to consider in detail the assignments of error. The decree of the court below is affirmed.